# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JEFERY FRANKLIN,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀Case No. 4:11CV01151 JCH/NAB
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MICHAEL ASTRUE,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Jefery Franklin's ("Franklin") applications for disability insurance benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Franklin alleges physical disability due to a back injury, herniated discs, right shoulder problems, diabetes, high blood pressure, hepatitis C and vision problems. (Tr. 150.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, the undersigned recommends that the ALJ's decision be affirmed.

## I. Procedural History

On December 31, 2008, Franklin filed an application for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income. (Tr. 122-30.) Franklin initially alleged January 1, 2004, as his onset date but later amended it to August 1, 2004. (Tr. 125, 129.) The Social Security Administration ("SSA") denied Franklin's claim and he filed a

timely request for a hearing before an Administrative Law Judge ("ALJ").  (Tr. 80-84, 85.)  The

SSA granted Franklin's request and the hearing took place on May 20, 2010.  (Tr. 24.)  The ALJ

issued a written decision on June 30, 2010, upholding the denial of benefits.  (Tr. 9-23.)  On May

27, 2011, the Appeals Council denied Franklin's request for review after considering new

medical evidence presented to the Appeals Council.  (Tr. 1-5.)  The ALJ's decision thus stands

as the final decision of the Commissioner.  Franklin filed this appeal on October 21, 2011.

## II.  Administrative Record

### A.     Testimony Before the ALJ

Franklin was represented by counsel at the hearing before the ALJ.  The ALJ heard

testimony from Franklin and vocational expert, James England, Jr. ("VE").

### 1.   Franklin's Testimony

Franklin testified that he was 57 years old as of the hearing date.  He completed eleventh

grade and received his General Education Diploma (GED).  (Tr. 24.)  Franklin intermittently

worked various custodial positions between 1992 and 2007. [1]  (Tr. 53, 55, 139-41.)  In 1995 and

1996 he assembled wheelchairs at Everest & Jennings Corporation ("Everest").  (Tr. 55, 137.)  In

1996 and 1997, he assembled screens and scraped window corners at Cardinal Window

Manufacturing Incorporated ("Cardinal Window").  (Tr. 137-39, 151.)  He was eventually laid

off.  (Tr. 54.)  In 1996 and 1997, Franklin also drove a forklift for several companies.  (Tr. 137-

39, 176.)  From 1998 through 2004, he was a machine operator for Elliot Tool and

Manufacturing Company ("Elliot").  (Tr. 42, 176.)  At Elliot, Franklin operated a metal press by

loading parts into the machine and pressing buttons.

---

[1] Franklin has worked for 18 different companies.  The record is inconclusive as to work
dates and job titles for most of these companies.  (Tr. 135-43, 174-83.)

In 2003, Franklin had right rotator cuff surgery. He returned to work between six and eight weeks after completing physical therapy. Franklin testified that he was fired because his back and shoulder trouble often prevented him from going to work and operating the metal press. (Tr. 47-48.) In 2006, he worked at Choice Personnel Staffing Incorporated ("Choice") as a laborer. (Tr. 31, 188.) He stopped working at Choice due to knee, shoulder, and foot problems. (Tr. 31.) Franklin was last employed for three weeks in 2007 at Express Services Incorporated as a utility worker, packing pamphlets into boxes. (Tr. 30, 188, 201.) Sitting and packing pamphlets, however, aggravated his back. (Tr. 43.)

Franklin testified that his vision was often blurry but an eye doctor found no optical issues after two examinations. (Tr. 36-37.) Franklin was on medication for diabetes and high blood pressure. (Tr. 34-35.) He testified that he took tramadol every other day for pain and that shoulder pain prevented him from lifting things. (Tr. 40, 42.) Franklin was working through a heroin problem. (Tr. 45-46.) He testified that he was "clean" for three weeks and had not missed work due to drug use. (Tr. 48.) He also testified that he used a cane regularly for three months to help with his knee problems. However, the cane was not doctor-prescribed. (Tr. 57-58.) Franklin testified he did not mow the grass, take out the trash, or consistently do any other household chores. Walking more than one block caused Franklin's knee to buckle and his feet to swell. (Tr. 34.) He testified that he could not stand for longer than ten minutes and could not sit for longer than fifteen minutes. (Tr. 41, 44.) He could read with glasses and did not have a driver's license. (Tr. 37-38.)

## 2. VE James England's Testimony

During the relevant time period, Franklin worked as a wheelchair assembly worker, window screen maker, and custodian. The VE classified Franklin's work as light, unskilled. The

VE classified Franklin's work as a press machine operator and forklift driver as medium and semi-skilled. The VE classified Franklin's work as a hand packager and plastic bag maker as medium, unskilled work. (Tr. 53.) The VE also testified that his past work outside the relevant time period, as a receptionist and secretary, were classified as sedentary, semi-skilled work. (Tr. 56-57.)

The ALJ posed three hypotheticals to the VE. First, the ALJ asked whether an individual over 50 years old with a high school education and Franklin's past work experience could perform his past work with the following restrictions: (1) limited to light work; (2) occasionally climb, stoop, crouch, or crawl; (3) never climb ladders, ropes or scaffolds; (4) occasionally climb ramps and stairs; (5) avoid hazards, moving machinery, unprotected heights and hazardous machinery. (Tr. 57.) The VE opined that such an individual would be able to work Franklin's past jobs as a wheel chair assembler and screen assembler. (Tr. 58, 60.)

Second, the ALJ asked, using the same parameters as the first hypothetical, whether an individual would be able to perform the past relevant work if he also needed to use a cane for balance. The VE opined an individual would not be able to perform the past relevant work if he needed a cane for balance. (Tr. 58.)

Third, the ALJ asked, using the same restrictions in hypothetical one, except the individual would never climb ladders, ropes or scaffolds, and only occasionally reach with their nondominant arm, whether an individual would be able to perform Franklin's past work. The VE responded that the individual would not be able to perform Franklin's work as a wheelchair assembler or screen assembler because the jobs require reaching with both arms. Franklin's attorney declined several opportunities to question the VE. (Tr. 59-61.)

**B.      Medical Records**

On September 5, 2003, William Kostman, M.D., operated on Franklin's right shoulder at Des Peres Hospital.  Dr. Kostman successfully performed a right shoulder arthroscopy to address a shoulder impingement, cartilage issues, and repair the tears in Franklin's shoulder.  (Tr. 211-12.)

On January 11, 2005, Franklin was admitted to Barnes Jewish Hospital Emergency Department for complications related to cocaine and opiate use.  Stephen Lefrak, M.D., treated and released him on January 14, 2005.  (Tr. 216-17.)

On January 31, 2005, Celso Rodrigues, M.D., and Patrick McCann, M.D., treated Franklin at Forest Park Hospital for testicular pain and swelling.  Dr. Rodrigues diagnosed him with acute epididymitis and a urinary tract infection, prescribed anti-bacterial medication and discharged him on February 3, 2005.  Dr. Rodrigues noted Franklin had been abusing cocaine the same day.  His drug screen was positive for cocaine, opiates, and marijuana.  His hypertension was stable, and he was given Librium, thiamine, and folic acid to treat an alcohol overdose.  (Tr. 270.)

On April 26, 2006, John Hartweger, M.D., treated Franklin at Forest Park Hospital for headaches, low back pain, and a urinary tract infection.  He stated his low back pain started the day before and that he had experienced headaches for the past six months.  He underwent chest x-rays, a head computerized tomography (CT) scan, and lower-spine x-rays.  The results were normal except that his back showed some straightening of the lumbar curve, disc space narrowing at L5-S1, sacroiliac joint asymmetry, calcification, and marginal bone spurs.  Dr. Hartweger treated Franklin with antibiotics and high blood pressure medication and released him on April 28, 2006.  Dr. Hartweger noted Franklin's chronic use of pain medication might have

caused his headaches.  Social services was also consulted regarding his substance abuse issues. He admitted using heroin, cocaine, and marijuana.  (Tr. 290-92, 293-96, 303-07.)

On October 9, 2008, Teresita Cometa, M.D., treated Franklin as a walk-in patient at Myrtle Hilliard Davis Comprehensive Health Centers ("Davis Health").  He complained of a boil on his buttocks, a knot on his chest, and back pain.  Dr. Cometa noted the lesion was from injecting heroin into his buttock and prescribed an antibiotic.  A chest x-ray was normal.  (Tr. 318.)

On November 19, 2008, Dr. Cometa treated Franklin at Davis Health for a follow-up visit.  He complained of hypertension and severe back pain.  She prescribed blood pressure medication, ordered a urinalysis, a lipid profile, and a complete colonoscopy.  Dr. Cometa discussed his heroin use and referred him to the West End Clinic for heroin addiction treatment. (Tr. 316-17.)

On November 25, 2008, Jiasan Fu, M.D., treated Franklin at Forest Park Hospital for hypercholesterolemia and an abscess in his buttocks from injecting heroin.  Dr. Fu treated him with insulin, IV Unasym, and opioid withdrawal medication.  Franklin responded well to treatment and was released on November 27, 2008.  (Tr. 251-52.)

On December 1, 2008, Olivera Boskovska, M.D., treated Franklin during a follow-up exam to his November 25th hospital visit at Davis Health.  Dr. Boskovska examined him and found his hypertension was inadequately controlled, but noted that he did not have his medication.  She increased his Levemir prescription and prescribed Novolog for his diabetes, an antibiotic for the abscess on the buttock, and Procardia for his hypertension.  Franklin did not allow Dr. Boskovska to examine the abscess on his buttock.  He stated he was a heroin user and

stopped using four days ago. Dr. Boskovska advised him to cease his "continuous opioid use." (Tr. 313-14.)

On December, 30, 2008, Dr. Boskovska saw Franklin for a refill on his insulin medication. He presented no other complaints. Dr. Boskovska noted his diabetes was inadequately controlled. She increased his diabetes medication, prescribed a blood glucose monitor, and a blood glucose test kit. Dr. Boskovska advised Franklin to return to the clinic if his condition worsened and to follow up in three weeks. Franklin's social history again indicated he stopped using heroin four days before the visit. (Tr. 311-12.)

On January 20, 2009, Dr. Boskovska treated Franklin for back pain. He stated he was injured at work in 2003 and was treated at Saint Louis University Hospital ("SLU Hospital"). He stated he had been diagnosed with a herniated disc in 2004. He commented that he often took Tylenol and ibuprofen for his back pain along with his son's morphine. He complained of worsening vision. Franklin stated he did not have chest pain or discomfort, limb numbness, feet lesions, dyspnea, polyphagia, or polydipsia. Dr. Boskovska found his hypertension was well controlled and continued the same therapy. His diabetes, however, was "uncomplicated, uncontrolled." She continued the same therapy, but noted that Franklin did not take the diabetes log book with him. She requested his medical records from SLU Hospital. Franklin's social history again indicated he stopped using heroin four days before the visit. (Tr. 335-36.)

On February 4, 2009, Dr. Boskovska saw Franklin for a refill on his insulin medication. He only requested a refill on his insulin medication and then left the office. Franklin's social history again indicated he stopped using heroin four days before the visit. (Tr. 333-34.)

On February 13, 2009, Gina McCrary-Smith, D.O., saw Franklin at Davis Health for an ear infection and knee and back pain. He requested pain medication. Franklin's social history

again indicated he stopped using heroin four days before the visit. Dr. McCrary-Smith diagnosed him with otitis media of the left ear. The medical records do not indicate what treatment was provided. (Tr. 353-54.)

On March 16, 2009, Bhattacharya Sarwath, M.D., saw Franklin at Davis Health for an internist examination and report for his disability claim. Dr. Sarwath reviewed his prior medical history before the exam. He complained of diabetes, hypertension, hepatitis, back pain, and right shoulder pain. Franklin was not using a cane during the visit. Franklin indicated he was diagnosed with diabetes five months ago. He stated he did not have laser surgery, retinopathy, or neuropathy. Franklin checked his blood pressure once daily and it was usually high. (Tr. 345.) Franklin's chest pain had improved since he quit smoking. He complained of shortness of breath and occasional headaches. Franklin stated his low back pain persisted for years but the pain did not radiate. He stated an MRI and x-ray showed he had arthritis. He stated he could stand for less than an hour, walk one block, climb one flight of stairs, and lift fifteen pounds. He commented that he climbed one flight of stairs to reach his mother's apartment. Franklin stated he took generic tramadol for his back pain with some relief. He stated that he had experienced shoulder pain for four years. Movement caused pain and a "click" in his right shoulder. Dr Sarwath also noted, without further explanation, that Franklin claimed "difficulty wearing his T-shirts and clothes." Franklin complained of pain in both knees. His right knee buckled occasionally and was more painful than his left knee. He told Dr. Sarwath he "occasionally does do groceries." (Tr. 346.) He stated he smoked less than one pack of cigarettes per day. Dr. Sarwath noted Franklin did not appear in acute distress or have tenderness or paravertebral muscle spasms in his back. His gait was within normal limit and Franklin could walk on his heels and toes and flex and touch his toes. Franklin performed a partial squat despite right knee

pain.  Franklin was not using any walking aid.  (Tr. 347.)  He had full range of motion in his hips, knees, ankles, and toes.  (Tr. 348.)  Franklin had 100 degrees and 150 degrees of flexion in his right and left shoulders, respectively.    His right and left shoulders abducted to 90 degrees and 150 degrees, respectively.  On a scale of one to five, his upper extremity strength was rated at four on the right side and five on the left side.  On a 3-point scale from "poor" to "good," Franklin's upper extremity strength test effort was "good" on both sides.  (Tr. 351-52.)  Dr. Sarwath determined that Franklin had poor control of his type II diabetes, elevated hypertension, low back pain with no radicular changes, right shoulder pain with decreased range of motion and no swelling present, hepatitis C, and substance abuse.  Franklin claimed that he stopped substance abuse four years before the examination.  He noted that Franklin's low back pain had no radicular changes and was mostly in the same area as the gluteal abscesses.  (Tr. 348.)

On March 25, 2009, Dr. Boskovska saw Franklin as a walk-in patient.  His diabetes was uncomplicated and uncontrolled.  Serology was planned for a prostate-specific antigen.  (Tr. 357-58.)

On July 28, 2009, Franklin saw Dr. Boskovska to have his ER prescriptions rewritten.  (Tr. 359-60.)

On August 18, 2009, Dr. Boskovska saw Franklin for a refill on his medication and a follow-up exam.  He did not complain of any pain.  He did not have his glucose meter with him.  He did not have any systemic, head, eye, cardiovascular, pulmonary, gastrointestinal, endocrine, hematologic or musculoskeletal symptoms.  Dr. Boskovska continued his hypertension treatment, refilled his medication, increased his Levemir, prescribed Accupril, and planned a colonoscopy screening.  Franklin's social history again indicated that he stopped using heroin four days before the visit.  (Tr. 361-63.)

On September 15, 2009, Dr. Boskovska saw Franklin for a follow-up exam and a medication refill.  He complained of back problems and requested medication for it.  He stated his blood sugar was above 240 or 250 in the morning and that he was taking Levemir regularly.  He did not have any systemic, head, eye, cardiovascular, pulmonary, gastrointestinal, endocrine, hematologic, or musculoskeletal symptoms. (Tr. 361.)  Dr. Boskovska found his hypertension was well controlled but his diabetes was inadequately controlled.  She prescribed generic tramadol for his back pain, increased his diabetes medications, and continued the existing hypertension.  Franklin's social history again indicated he stopped using heroin four days before the visit.  (Tr. 364-66.)

On November 10, 2009, Dr. Boskovska saw Franklin for a follow-up exam and a medication refill.  He complained of a cold and requested medication.  He reported his pain level as zero on a scale of one to ten.  He stated he smoked marijuana two days ago.  His blood sugar was above 200 that morning.  Franklin stated his blood sugar was never below 140 in the morning when taking his 50 units of Levemir in the evening.  He did not have any systemic, head, eye, cardiovascular, pulmonary, gastrointestinal, endocrine, hematologic or musculoskeletal symptoms. (Tr. 367.)  Dr. Boskovska found his hypertension was inadequately controlled.  She prescribed an antibiotic for bronchitis, increased his diabetes medication, and advised Franklin to cease marijuana use.  Franklin refused blood work.  His social history again indicated that he stopped using heroin four days before the visit.  Dr. Boskovska refilled his medications and prescribed bronchitis medication.  (Tr. 367-69.)

On December 17, 2009, Dr. Boskovska saw Franklin as a walk-in patient for an upper respiratory infection and medication request.  Franklin did not have neck or chest pain, but complained of right leg pain.  He was smoking cigarettes.  Dr. Boskovska noted that Franklin did

not appear to be in acute distress.  Dr. Boskovska prescribed bronchitis medication and advised Franklin to cease smoking.  (Tr. 370-72.)

On January 19, 2010, Dr. Boskovska saw Franklin for a follow-up exam and a medication refill.  He complained that his knee "gave out" twice per month and that walking induced knee pain for a couple months.  Franklin's blood sugar was approximately 240.  He did not have any systemic, head, eye, cardiovascular, pulmonary, gastrointestinal, endocrine, or hematologic symptoms. (Tr. 373.)  Dr. Boskovska found the knee had no swelling, induration, edema, erythema, warmth, dislocation, deformity, cyst, mass, tenderness, muscle spasm, nodule, or muscle weakness.  She also noted his knees had a normal range of motion and found no motion-induced tenderness or pain.  (Tr. 374.)  His hypertension, hyperlipidemia, and diabetes were inadequately controlled.  Franklin was also not taking his prescriptions.  She found hyperlipidemia and had a lipid panel performed.  Finally, she found arthropathy of the knee and ordered an x-ray.  Dr. Boskovska continued Franklin's hypertension and diabetes treatments and referred him to an orthopedic specialist.  Franklin's social history again indicated he stopped using heroin four days before the visit.  (Tr. 373-75.)

On February 10, 2010, Dr. Boskovska saw Franklin for a follow-up exam.  He complained of knee pain and constipation.  He stated he stopped taking his Novolog because he thought it was causing his constipation.  Franklin complained his knee was still swollen and in pain.  Dr. Boskovska noted he had no head, neck, eye, breast, cardiovascular, pulmonary, endocrine, or hematologic symptoms.  (Tr. 376.)  She found his hypertension was well controlled.  She also found his diabetes was uncontrolled with manifestations.  Franklin stated his blood sugar was 400 that day.  She increased his Levemir and advised him to take his Novolog.  Dr. Boskovska instructed him to continue his current therapy for hypertension

(Procardia 60mg).  An x-ray of the knee showed some calcified cartilage and arthritis.

Franklin's social history again indicated he stopped using heroin four days before the visit.  (Tr.

376-78, 393-94.)

On April 13, 2010, Dr. Boskovska saw Franklin for a follow-up exam and a refill on his

medications.  He stated he had a cough at night.  He complained of knee pain and that it was still

"giving out."  He reported lower back pain.  He did not have head, neck, cardiovascular,

gastrointestinal, or hematologic symptoms.  (Tr. 418.)  Dr. Boskovska prescribed Diovan for his

cough.  She found his hypertension was well controlled with Accupril 40 mg daily.  She also

found his diabetes was improving with medication but increased his prescription because his

blood-sugar was 170-180 that morning.  (Tr. 419.)  Franklin was not taking his Novolog.  She

also observed a loose body in the joint space of the right knee.  Franklin already had an

appointment with an orthopedic specialist scheduled.  Dr. Boskovska advised him to cease

alcohol and tobacco use.  Franklin's social history again indicated that he stopped using heroin

four days before the visit.  (Tr. 418-20.)

On May 14, 2010, Dr. Boskovska saw Franklin for gout-related issues.  Franklin told Dr.

Boskovska that he was diagnosed with gout at Forest Park Hospital the previous day.  (Tr. 399,

414.)  Franklin stated he needed the prescription for generic indocin (50mg) refilled.  Dr.

Boskovska refilled the gout medication.  (Tr. 414-15.)

On June 02, 2010, Dr. Boskovska saw Franklin for ear pain, constipation, and a sore

throat.  Franklin also requested a refill of his hypertension and diabetes medications.  (Tr. 411.)

Dr. Boskovska diagnosed him with otitis media of the right ear and prescribed amoxicillin.  She

also diagnosed him with allergic rhinitis and prescribed generic cetirizine (10mg) and Flonase.

She noted his diabetes was uncontrolled with manifestations. (Tr. 413.) Franklin stated he used heroin three days before the visit. (Tr. 411.) He was advised to stop using heroin. (Tr. 413.)

On July 6, 2010, Dr. Boskovska saw Franklin for a follow up exam and medication refill. He commented that he was scared by a lump in his left breast he noticed one month before the visit. He stated he had left chest pain that was sometimes severe. He stated his blood sugar was 160 in the morning and was "much better." Franklin did not have his meter with him. Dr. Boskovska noted he had no head, neck, cardiovascular, gastrointestinal, or hematologic symptoms. (Tr. 407.) He complained of gout pain. Dr. Boskovska found unenlarged lymph nodes, a left-breast mass, well-controlled hypertension, and inadequately controlled diabetes. She increased his Levemir to 75 mg a day and ordered a chest x-ray. Dr. Boskovska continued hypertension therapy (Procardia 60mg), prescribed tramadol for his knee, Novolog for diabetes, and ordered a mammogram. She also referred him to a breast surgeon. (Tr. 408-09.)

On September 19, 2010, Abdul Alroubaie, M.D., of the St. Alexius Hospital Department of radiology performed an x-ray on Franklin's ankle. Dr. Alroubaie opined that the ankle mortise was intact and that the talar dome was preserved. He saw no fracture, dislocation, destructive bone lesion, or significant degenerative change. (Tr. 438.)

On September 20, 2010, Dr. Boskovska saw Franklin for a follow-up exam and medication refill. Franklin stated he saw a breast surgeon who told him the lump in his chest was benign. He stated he was constipated since ceasing heroin and alcohol use. He complained of foot swelling and gout pain. He mentioned, however, that his feet were better and the swelling substantially subsided since he took his prescription. Dr. Boskovska noted he did not have any neck, head, cardiovascular, pulmonary, endocrine, or hematologic symptoms. Franklin had recently completed a drug rehabilitation program for heroin use and stated he had been clean

13

for 12 days. (Tr. 402.) Dr. Boskovska noted mild right foot swelling, improved hypertension and improved gout. She prescribed the same hypertension medication (Procardia 60mg and Diovan 160mg), the same diabetes medications (Ascensia Contour test, BD Short Pen Needles, Levemir 75 units, Microlet Lancets, Novolog 7 units), Colace 100mg for constipation, and Indocin and Allopurinol 100mg for Franklin's gout. She also instructed him to refrain from meat and beans. (Tr. 404.)

### III. ALJ Decision

The ALJ determined that Franklin has not engaged in substantial gainful activity after his disability onset date of August 1, 2004. The ALJ found he had several severe impairments: "mild degenerative disc disease of the lumbosacral spine, mild degenerative disease of his right knee, status-post arthroscopic surgery of the right shoulder, insulin-dependent diabetes mellitus, hypertension, hyperlipidemia and erectile dysfunction." (Tr. 16.) The ALJ determined that Franklin did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ determined that Franklin has the residual functional capacity ("RFC") to:

> perform the physical exertional requirements of [light] work except probably for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; climbing of ropes, ladders or scaffolds; doing more than occasional climbing of ramps and stairs or balancing, stooping, kneeling, crouching, or crawling; or having concentrated or excessive exposure to unprotected heights or dangerous moving machinery.

(Tr. 19.) The ALJ found that these restrictions would allow Franklin to pursue his previous employment as a wheelchair assembler and a window screen assembler. (Tr. 16.) The ALJ determined that Franklin was not under a disability as defined by the Social Security Act, at any time through June 30, 2010. The ALJ did not find Franklin's allegation of impairments credible. (Tr. 19.)

14

## IV.    Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1)    the credibility findings made by the Administrative Law Judge;

(2)    the education, background, work history, and age of the claimant;

(3)    the medical evidence from treating and consulting physicians;

(4)    the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5)    any corroboration by third parties of the plaintiff's impairments; and

(6)    the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 992 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id*. at 1322.

## V. Discussion

Franklin alleges two points of error. First, he asserts that the ALJ's RFC determination was not supported by "some medical evidence." Second, Franklin asserts that the ALJ's hypothetical failed to capture the "concrete consequences" of his impairment and therefore the VE's answer to the hypothetical did not constitute substantial evidence.[2]

### A. The ALJ's RFC Determination.

Franklin contends that the ALJ either improperly ignored conflicting evidence or drew impermissible inferences from the lack of documented medical evidence supporting Franklin's

---

[2] The ALJ posed three hypotheticals, but Franklin could only return to his past relevant work under the first hypothetical.

subjective complaints and thus did not rely on "some medical evidence" in his RFC determination. Specifically, Franklin contends that "the [ALJ's] decision cites absolutely no medical evidence for its contention that Plaintiff did not require a cane for balance and in light of the objective evidence." (Pl.'s br. 13.) While it is true that an ALJ may not draw upon his own inferences from medical reports, this is not the case. *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 2003). Here, the ALJ made a credibility determination regarding inconsistencies in Franklin's disability claims. *See Wildman v. Astrue,* 596 F.3d 959, 969 (8th Cir. 2010) ("[Franklin] fails to recognize that the ALJ's determination regarding [his] RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart,* 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).

The ALJ followed the five-step sequential evaluation process and found at step four that Franklin had the RFC for light work, which included his past relevant work. Franklin had the burden of showing that he was disabled through step four of the sequential analysis. Only after the analysis has reached step five does the burden shift to the Commissioner to show that there are other jobs in the economy that Franklin could perform. *See Snead v. Barnhart*, 360 F.3d 834, 836 (8th Cir. 2004). The ALJ concluded, using evidence he found credible, that Franklin retained the RFC to perform his past work as a wheelchair assembler and a window screen assembler. Therefore, the analysis never proceeded to step five and the burden remained on Franklin to prove his disability. To the extent Franklin's argument attempts to prematurely shift the burden to the Commissioner it must fail. The ALJ relied upon his conclusion that Franklin's subjective complaints were not fully credible and unsupported by objective medical evidence. Thus, the Court will first consider the ALJ's credibility determination, as Franklin's credibility was essential to the ALJ's RFC determination.

The ALJ made specific findings as to the credibility of Franklin's assertions regarding his ailments' severity. Specifically, Franklin contests the ALJ's conclusions regarding his cane use and right shoulder. The ALJ asserted that Franklin's claims of knee instability to an extent necessary for cane use was not credible. The ALJ also asserted that there was no credible evidence that, after the 2003 operation, Franklin's right shoulder caused major functional restrictions that would preclude light work. Based on these findings, the ALJ cited and reviewed the *Polaski* factors and found that Franklin was not fully credible. Substantial evidence supports this finding.

The ALJ is not required to discuss each *Polaski* factor as long as "he acknowledges and considers the factors before discounting a claimant's subjective complaints." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (citation omitted). In addition to the *Polaski,* factors, another factor to be considered is the absence of objective medical evidence to support the complaints. see *Mouser v. Astrue,* 545 F.3d 634, 638 (8th Cir. 2008). An ALJ, however, may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Id.* Here, the ALJ not only found Franklin's complaints not credible because they were unsupported by objective medical evidence, but also because they conflicted with credible medical and other evidence of record. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart,* 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue,* 600 F.3d 922, 932 (8th Cir. 2010).

The ALJ also evaluated Franklin's work history and found it "excellent up to and including his alleged onset date of disability." (Tr. 14.) Indeed, while the ALJ did not consider all of Franklin's post 2004 work experience substantial gainful activity, he did properly consider

it as evidence inconsistent with Franklin's disability allegation.  *See Roe v. Chater,* 92 F.3d 672, 677 (8th Cir. 1996) (actual activities, including work, incongruous with contention that cannot work); *Comstock v. Chater,* 91 F.3d 1143, 1147 (8th Cir. 1996) (work activity belies claim of disabling pain); *Piepgras v. Chater,* 76 F.3d 233, 236 (8th Cir. 1996) (wide range of activities, including working two days a week, supports finding of no disability); *Starr v. Sullivan,* 981 F.2d 1006, 1008 n. 3 (8th Cir. 1992) (even though not substantial gainful activity, work activity determinative of capacity for work); *Thompson v. Sullivan,* 878 F.2d 1108, 1110 (8th Cir. 1989) (any work during claimed disability may show capacity for substantial gainful activity).  Franklin returned to work after his 2003 shoulder surgery and he worked in 2006 and 2007.

The ALJ also evaluated Franklin's daily activities.  Franklin testified that his persistent blurred vision prevented him from watching television, recognizing a long-time neighbor from across the street, and reading.  However, he also testified that he could read wearing glasses. Franklin had two eye examinations and doctors found no significant problems.  On April 16, 2010, an eye doctor concluded that Franklin had 20/25 vision in both eyes with no retinopathy or other ophthalmological complications.  Indeed the doctor noted his eyes were "normal" and "healthy."  (Tr. 36-37; 416-17.)  Franklin testified that he could not stand more than ten minutes, sit more than fifteen minutes, or walk more than a block at a time.  However, he stated that he would walk about a block near his house every day or two up until November 2009.

The ALJ discussed Franklin's episodic medical treatment history and found it inconsistent with Franklin's subjective claims.  The failure to seek regular medical assistance for an alleged impairment is reason to discredit a claimant's allegation of a disabling condition.  *See Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997).  Franklin had right shoulder surgery in September of 2003 and alleges August 1, 2004 as his disability onset date.  However, the first

record of medical treatment is from January 11, 2005, and it is not related to the shoulder.  On

January 31, 2005, Franklin's hypertension was "stable" when he was hospitalized for illicit drug

related complications.  Franklin's next doctor visit was not until April 26, 2006.  Franklin

claimed that his knee issues caused him to stop working in June of 2007.  However, he did not

seek medical treatment until October 2008, shortly before filing for disability.  As the ALJ

indicated, Franklin first complained about right knee problems on January 19, 2010.  "Although

the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity

based on all relevant evidence, a claimant's residual functional capacity is a medical question."

*Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (citing *Lauer v. Apfel,* 245 F.3d 700, 704

(8th Cir. 2001); *Singh*, 222 F.3d at 451).

The ALJ is not required to discuss every item of evidence in detail.  *Morrison v. Apfel*,

146 F.3d 625, 628 (8th Cir. 1998).  The court may consider all of the ALJ's analysis, not just his

summary or conclusions.  *Wies v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2008).  Here, the ALJ

fully discussed the medical and other evidence of record and supported his finding before

describing Franklin's RFC.  Franklin even concedes that the ALJ's decision "recited much of the

medical evidence."  (Pl.'s br. 12).  He specifically compared, contrasted, and evaluated medical

records, medical opinions, testimony, other evidence, and made credibility determinations before

he reached his RFC conclusion.

In November 2008, Dr. Cometa noted that Franklin's knee had no swelling, induration, or

edema.  (Tr. 316.)  The ALJ correctly noted that there are no documented complaints of knee

pain or a search for treatment until five years after Franklin's alleged onset date.  (Tr. 17.)  On

February 18, 2009, for example, Franklin had his toenails debrided, but did not complain of knee

pain.  (Tr. 355-56.)  Even his documented knee problems, which the ALJ discussed, showed only

early degenerative osteoarthritis and a calcified loose body in the joint space. (Tr. 16.) The ALJ correctly observed that Franklin was never given any advanced treatment for his knee issues such as physical therapy, a knee brace, or surgery. On March 16, 2009, Dr. Bhattacharya observed that he was able to perform a partial squat despite some right knee pain. Dr. Bhattacharya also noted, however that Franklin retained full range of motion in both knees and that Franklin was not using any assistive walking device. (Tr. 347.) In September of 2010, a three-angle right ankle x-ray showed no fracture, dislocation, destructive bone lesion or significant degenerative changes despite some edema. (Tr. 433-38.) The ALJ's RFC determination limits Franklin's physical exertional and nonexertional requirements accordingly. All three hypotheticals recognized Franklin's limited ability to stoop, crawl, crouch, and climb ramps, stairs, ropes, ladders or scaffolds. Those restrictions are supported by substantial evidence.

The objective medical evidence regarding Franklin's shoulder also supports the ALJ's RFC assessment. Franklin had reduced range of motion in his right shoulder. This, however, was accounted for in the ALJ's RFC determination which limited Franklin to lifting and carrying no more than ten pounds frequently or twenty pounds occasionally. (Tr. 19.) Franklin's medical records are almost void of shoulder complaints and his complaints only began six years after his onset date. (Tr. 419.) See *Sangel v. Astrue*, 785 F.Supp. 2d 757, 776 (N.D. Iowa 2011) (determining that claimant's failure to seek treatment for alleged long term problems on more than a short term or incidental basis was an inconsistency negatively affecting claimant's credibility.) The ALJ's determination on Franklin's shoulder was supported by sufficient medical evidence.

With respect to the cane use limitation, Franklin contends that the ALJ's decision "cites absolutely no medical evidence for its contention Plaintiff did not require a cane for balance and

in light of the objective evidence." This argument impermissibly shifts the burden. "To receive disability benefits, [Franklin] must establish a physical impairment lasting at least one year that prevents [him] from engaging in any gainful activity." *Kelley v. Callahan,* 133 F.3d 583, 587 (8th Cir. 1998) (citation omitted). Thus, it is Franklin 's burden to prove he is disabled, not the Commissioner's burden to prove he is not. *See Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted). As discussed, there is no credible medical evidence that supports Franklin's cane use and the ALJ properly evaluated the credibility of Franklin's limitations based on all of the evidence. The ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. *Guilliams v. Barnhart,* 393 F.3d 798, 801 (8th Cir. 2005); *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001). Substantial evidence supports the ALJ's decision.

Further, Franklin's self-prescribed cane use was not medical evidence. *See e.g., Kriebaum v. Astrue* 280 Fed. Appx. 555, 559 (8th Cir. 2008) (finding medical records unsupportive of significant effects on Plaintiff's functional abilities where cane use was "self-prescribed."[3] Thus, the ALJ relied on "some" medical evidence in reaching his decision. Substantial evidence supports this conclusion.

The ALJ properly evaluated Franklin's credibility using a number of the *Polaski* factors and the lack of objective medical support. He also gave good reasons for discounting Franklin's subjective complaints. Further, the ALJ's decision was supported by substantial medical and other evidence of record. Thus, the ALJ's RFC determination must not be disturbed.

---

[3] *Cf. Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) ("Further, the ALJ noted that the appellant had walked slowly and used a cane at the hearing, although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk. In fact, two doctors had specifically noted that the appellant did not need such a device. Thus the ALJ discounted the appellant's testimony because he found it to be unbelievable in general, not because the extent and severity of the appellant's pain or fatigue was unsupported by medical evidence.")

**B.       The ALJ's Hypothetical**

Franklin contends the ALJ's hypothetical failed to "capture the concrete consequences" of his impairment and therefore did not accurately reflect his limitations.  "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision. Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the concrete consequences of those impairments." *Jones v. Astrue,* 619 F.3d 963, 972 (8th Cir. 2010) (internal quotation marks and citation omitted).

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise*, 641 F.3d 909, 927 (8th Cir. 2011).  As noted above, the ALJ properly discounted Franklin's subjective complaints and allocated more weight to certain medical opinions than others. Accordingly, the hypothetical question posed to the VE did not need to incorporate additional limitations that the ALJ had properly disregarded.  See *Wildman*, 596 F.3d at 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded.").

The ALJ's findings of Franklin's RFC are supported by substantial evidence.  The hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.  *See e.g., Martise*, 641 F.3d at 927; *Renstrom v. Astrue*, No. 11-2975, 2012 WL 2094316 at *9 (June 12, 2012).

## VI.    Conclusion

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support be **DENIED** and that judgment be entered in favor of Defendant.

The parties are advised that they have fourteen (14) days to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 31st day of July, 2012.

s/Nannette A. Baker _____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE